IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FRANK BAGIENSKI, | § | |
| ROBERT & LEANNE BATCHELDER, | § | |
| WAYNE & JENNY BIVANS, | § | |
| STEVE BLESSING, | § | |
| IRA RESOURCES, INC. FBO EDWARD | § | |
| BODINE (ROTH IRA 35-22307), | § | |
| IRA RESOURCES, INC. FBO REBECCAH | § | |
| BODINE (ROTH IRA 35-22308), | § | |
| REBECCAH & ED BODINE, | § | |
| BETHEL BOSE, | § | |
| ALAN J. & MARY ALICE BOSLER, | § | |
| BRUNER REVOCABLE LIVING TRUST, | § | |
| BRENT BRUNNEMER, AS ASSIGNEE OF | § | |
| IRA RESOURCES, INC. FBO LORI | § | |
| RODEBECK (IRA 35-37364), | § | Civil Action No. 4:17-cv-02435 |
| BRENT BRUNNEMER, | § | |
| BRENT BRUNNEMER, AS ASSIGNEE OF | § | |
| LORI M. RODEBECK, | § | |
| BRENT BRUNNEMER, AS ASSIGNEE OF | § | |
| JOHN J. MCAVOY & TIFFANY S. | § | |
| MCAVOY, | § | |
| BRENT BRUNNEMER, AS ASSIGNEE OF | § | |
| CHRISTOPHER LUKE & ANNE LUKE, | § | |
| BRENT BRUNNEMER, AS ASSIGNEE OF | § | |
| MARK & RENEE NOE, | § | |
| ROBERT & VIRGINIA BRUNNEMER, | § | |
| JOHNIE & MARY BURKE, | § | |
| IRA RESOURCES, INC. FBO BRET D. | § | |
| BUSBY ROTH IRA 35-22333, | § | |
| RANAYE BUSBY, | § | |
| LISABETH  & ROBERT C. CANADA, | § | |
| LISABETH ANN CANADA, | § | |
| GERALD  & PAMELA CHEEK, | § | |
| IRA RESOURCES, INC. FBO STEVEN F. | § | |
| COLLINS ROTH IRA 35-22312, | § | |
| STEVEN & LINDA COLLINS, | § | |

IRA RESOURCES, INC. FBO PAIGE
CONBOY ROTH IRA 35-22316,                    §
                                             §
IRA RESOURCES, INC. FBO SEAN P.              §
CONBOY ROTH IRA 35-22316,                    §
                                             §
SEAN & PAIGE CONBOY,                         §
                                             §
REBECCA J.  & LAWRENCE E. COX,               §
                                             §
WILLIAM & DIANA DARLING,                     §
                                             §
IRA RESOURCES, INC. FBO JEFFREY J.           §
DAVIS ROTH IRA 35-22306,                     §
                                             §
JEFFREY J. DAVIS & NAOMI DAVIS,              §
                                             §
IRA RESOURCES, INC. FBO SUMMER               §
DENNY IRA 35-37316,                          §
                                             §
JAMES DESHIELDS,                             §
                                             §
FRIEDA DUNLAVY,                              §
                                             §
ALAN & JANE GANGWER,                         §
                                             §
DARLENE & MICHAEL GINDER,                    §
                                             §
ROGER GOLDEN,                                §
                                             §
DAVID & KATTE HANNER,                        §
                                             §
ANNE HARRINGTON,                             §
                                             §
IRA RESOURCES, INC. FBO ANNE M.              §
HARRINGTON IRA 35-37330,                     §
                                             §
IRA RESOURCES, INC. FBO ANNE M.              §
HARRINGTON ROTH IRA 35-22324,               §
                                             §
BRYCE HIGGONBOTTOM,                          §
                                             §
IRA RESOURCES, INC. FBO BRYCE                §
HIGGINBOTTOM ROTH IRA 35-22317,             §
                                             §
RUTH ANN HOLT,                               §
                                             §
HILLERY N. HOLT,                             §
                                             §
DONNA HUTTON,                                §
                                             §
IRA RESOURCES, INC. FBO WILLIAM              §
HUTTON ROTH IRA 35-22321,                    §
                                             §
DONNA & WILLIAM HUTTON,                      §
                                             §
GARY & DEBORAH K. HUTTON,                    §
                                             §
RONALD & JUDITH J. JAMES,                    §
                                             §
DOUG & ANN JOHNSON,                          §
                                             §
JOYCE JUDGE,                                 §
                                             §
LOIS JANE KEEVIN,                            §
                                             §
SANDRA KINNAMAN,                             §

JOY ELLEN KINNEY,                              §
EHSAN & MARY KOUSARI,                          §
                                               §
CHRISTOPHER & JILL TOWNSEND,                   §
CARL D. & CHERYL J. LEMASTER,                  §
                                               §
IRA RESOURCES, INC. FBO CAMILLE                §
LITTLE ROTH IRA 35-22326,                      §
IRA RESOURCES, INC. FBO STEPHEN C.             §
LITTLE IRA 35-37335,                           §
                                               §
JOE & DEBRA MARCUM,                            §
JOHN & TIFFANY MCAVOY,                          §
                                               §
TERRY MCCLAIN,                                 §
IRA RESOURCES, INC. FBO LUCINDA                §
MCCORD IRA 35-37321,                           §
                                               §
 IRA RESOURCES, INC. FBO STEPHEN               §
MCCORD ROTH IRA 35-22304,                       §
                                               §
CHRISTINE MCKAIN,                              §
IRA RESOURCES, INC. FBO JOAN                   §
MERCER IRA 35-37317,                           §
                                               §
JOAN MERCER,                                   §
GILBERT & DEBRA MORRIS,                         §
                                               §
MICHAEL NECESSARY,                             §
MICHAEL & PAMELA NECESSARY,                     §
                                               §
SUE ELLEN PEGLOW,                              §
ALAIN P. PEREZ-MAJUL,                          §
                                               §
ALENA P.  PEREZ-MAJUL PEREZ,                   §
FERNANDO & MARIA PEREZ-MAJUL,                   §
                                               §
IRA RESOURCES, INC. FBO CYNTHIA                §
PETERS IRA 35-37361,                           §
IRA RESOURCES, INC. FBO DAVID A.               §
PIKE ROTH IRA 35-22305,                        §
                                               §
DONALD B. & MYRTLE D. REECE JT                 §
REV TRUST,                                     §
                                               §
TERRY & ROSEMARY RENBARGER,                     §
JOSE & BETH REYES,                             §
                                               §
MARY RHOTEN,                                   §
PENNY RICKS,                                   §
                                               §
RICK ROBINSON,                                 §
IRA RESOURCES, INC. FBO MARIO                  §
SGRO ROTH IRA 35-22325,                        §

| | |
|---|---|
| MARIO SGRO, | § |
| GLORIA ST. LOUIS, | § |
| IRA RESOURCES, INC. FBO MARY ANN | § |
| STROEH, | § |
| IRA RESOURCES, INC. FBO STEPHEN L. | § |
| STROEH, | § |
| DONNA L. SULLIVAN, | § |
| IRA RESOURCES, INC. FBO CRAIG | § |
| TREES IRA 35-35-37326, | § |
| JEFFREY & SIDNEY WALTER, | § |
| IRA RESOURCES, INC. FBO WARREN | § |
| WELPOTT ROTH IRA 35-22322, | § |
| TRAVIS & MELISSA WELPOTT, | § |
| WARREN WELPOTT LIVING TRUST, | § |
| JAY & SUE WILLIAMS, | § |
| BETTY JO ZEIGLER, | § |
| DREW DAVIS, | § |
| RICK ENRIQUEZ, | § |
| RICK ENRIQUEZ PROFIT SHARING | § |
| TRUST, | § |
| GILL DAVIS, TRUSTEE OF | § |
| MULTIMEDIA GRAPHIC NETWORK, | § |
| INC. PENSION PLAN, | § |
| JOHN D. TRAN, and | § |
| PHILIP WILKINSON, | § |
| | § |
| Plaintiffs | § |
| | § |
| vs. | § |
| | § |
| PEPPERWOOD FUND II, LP, | § |
| GIANT GRAY, INC., OMNI AI, INC., MICHAEL | § |
| O'DONNELL, OZZIE KALIL, LARRY | § |
| HANNAH, and PETE NICHOLAS, | § |
| | § |
| Defendants. | § |

---

## PLAINTIFFS' FIRST AMENDED COMPLAINT

---

TO THE HONORABLE JUDGE OF THIS COURT:

COME NOW the Plaintiffs identified above (collectively, "Plaintiffs") and file this their First Amended Complaint against Defendants PEPPERWOOD FUND II, LP, GIANT GRAY, INC., OMNI AI, INC., MICHAEL O'DONNELL, OZZIE KALIL, LARRY HANNAH, and PETE NICHOLAS (collectively, "Defendants"); and would respectfully show the Court the following:

## I.
## PARTIES

### A. Plaintiffs

1.     Plaintiff Sue Ellen Peglow is an individual residing in Arkansas.

2.     Plaintiffs Drew Davis, John D. Tran, Philip Wilkinson, and Gill Davis, Trustee of Multimedia Graphic Network, Inc. Pension Plan are individuals residing in California.

3.     Plaintiff IRA Resources, Inc. is a corporation organized and existing under the laws of California.

4.     Plaintiffs Pamela and Gerald Cheek, Rosemary and Terry Renbarger, Betty Jo Zeigler, Rick Enriquez, and Rick Enriquez, Trustee of Rick Enriquez Profit Sharing Trust are individuals residing in Florida.

5.     All other Plaintiffs are either individuals residing in or entities organized and existing under the laws of Indiana.

### B. Defendants

6.     Defendant PEPPERWOOD FUND II, LP ("Pepperwood") is a Texas limited partnership.     It has been served with process through its registered agent, Sloan & Roberts, PLLC, at 5151 Belt Line Rd., Suite 1050, Dallas, TX 77254.

7.     Defendant GIANT GRAY, INC. ("FFLP") is a corporation duly organized and

existing under the laws of the state of Texas.  It has been served with process through its registered agent, Michael J. O'Donnell, at 1909 Woodall Rodgers Fwy, Suite 590, Dallas, TX 75201.

8.      Defendant OMNI AI, INC. ("Omni") is a corporation duly organized and existing under the laws of the state of Texas.  It has been served with process through its registered agent, Sloan & Roberts, PLLC, at 5151 Belt Line Rd., Suite 1050, Dallas, TX 77254.

9.      Defendant MICHAEL O'DONNELL. ("O'Donnell") is an individual residing in Dallas County, Texas.  He has been served with process at his usual place of business located at 1909 Woodall Rodgers Fwy, Suite 590, Dallas, TX 75201.

10.      Defendant OZZIE KALIL ("Kalil") is an individual residing in Harris County, Texas.  He has been with process at his usual place of business located at 1400 Broadfield Blvd., 6th Floor, Houston, TX 77084.

11.      Defendant LARRY HANNAH ("Hannah") is an individual residing in Florida. He may be served with process at his principal residence located at 763 Beach View Dr., Boca Grande, Florida 33921; or wherever he may be found.

12.      Defendant PETE NICHOLAS, ("Nicholas") is an individual residing in Florida. He may be served with process at his usual place of business located at 216 Harbor Drive, Boca Grande, FL, 33921; or wherever he may be found.

13.       Pepperwood, Giant Gray, Omni, O'Donnell, Kalil, Hannah, and Nicholas are sometimes hereinafter referred to, collectively, as the "Defendants."

## II.
## JURISDICTION AND VENUE

14.      This Court lacks subject-matter jurisdiction over this case because two of the defendants and several Plaintiffs are citizens of Florida, as set forth in paragraphs 4, 11, and 12,

*supra*.  Accordingly, complete diversity of citizenship is lacking.

15.     This Court has personal jurisdiction over the individual Defendants because they are all residents of and/or regularly conduct business in the State of Texas.  This Court has personal jurisdiction over corporate Defendants because they are all legal entities organized and existing under the laws of Texas and/or regularly conduct business in the State of Texas.

16.     This Court also has personal jurisdiction over Defendants, pursuant to Section 17.042(2) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, because, as more specifically alleged below, Defendants committed a tort, in whole or in part, that occurred in the State of Texas.

17.     Venue for this case is proper in the Southern District of Texas, Houston Division, because all or a substantial part of the cause(s) of action set forth herein occurred in this District.

### III.
### FACTS[1]

**A.  Introduction**

18.     This case arises from a fraudulent scheme contrived and orchestrated by Michael O'Donnell, whereby he and the other Defendants, in a concerted effort, fraudulently encumbered and transferred artificial intelligence patents and intellectual property owned by Giant Gray, Inc. worth an estimated $200 million.  Giant Gray (formerly known as Behavioral Recognition Systems, Inc.) develops a "self-learning" artificial intelligence software platform that teaches itself to recognize and alert users on abnormal behavior patterns.  The company's artificial intelligence patents and intellectual property are its principal assets.

19.     In 2015, Plaintiffs loaned Giant Gray approximately $7,765,000, in the aggregate,

---

[1] All references to "Defendants" means all of the defendants cited herein.  Further, the events described herein and exhibits attached hereto are by way of illustration only, not by way of limitation.  In other words, the facts alleged herein are not exhaustive.

initially on an unsecured basis.  In 2016, Giant Gray engaged Michael O'Donnell of Pepperwood Capital Partners, LLC, a private equity group, to raise equity capital for the company. O'Donnell then formed Pepperwood Fund II, L.P. for the purpose of raising $20 million in equity capital, $15 million of which would be used to buy a controlling share of the preferred and common stock in Giant Gray, and the remainder would be used for operating capital.  Upon completion of the buy-out, Giant Gray would issue new stock to Pepperwood's investors though a private placement memorandum known as "Series X Stock."  After the capital raise was complete, Pepperwood bought-out a controlling share of the preferred and common stock in Giant Gray for $15 million and O'Donnell took control of the company.

20.     Immediately after O'Donnell took control, Giant Gray stopped making monthly interest payments to Plaintiffs' and then failed to pay the balance owed on or before the maturity date.  With the assistance of Defendants Kalil, Hannah, and Nicholas, O'Donnell induced Plaintiffs to modify and extend their notes, claiming it was necessary to consummate a $20 million equity raise that was underway.  In consideration for the modification and extension, Giant Gray granted Plaintiffs security interests in Giant Gray's assets, including the patents and intellectual property.  But, O'Donnell cleverly drafted the agreement in such a way that Plaintiffs could not perfect their security interests unless and until a default occurred.  After Plaintiffs agreed to the modification and extension, O'Donnell surreptitiously booked Pepperwood's investment in Giant Gray as a secured loan and then filed a UCC financing statement perfecting a security interest in all of Giant Gray's assets.  By the time Plaintiffs' notes matured, O'Donnell and the other Defendants had successfully stripped away all of Giant Gray's assets without paying a dime to Plaintiffs or any other creditors.

**B. Plaintiffs loan Giant Gray $7,765,000 and receive Convertible Promissory Notes in exchange.**

21.     On or around May 1, 2015, Giant Gray[2] executed Convertible Promissory Notes (the "Notes") in favor of each Plaintiff in the sum of $7,765,000, in the aggregate.  The Notes were all in substantially the same form as the one attached hereto as **<u>Exhibit A</u>** and incorporated herein by reference.

22.     The Notes provide for an interest rate of 12.00% per annum (the "Interest Rate"), payable monthly in arrears on the first Business Day each month until the earlier of either (a) the date all unpaid principal and accrued interest are paid in full; or (b) if any Holder exercised its right to convert the Note to Common Stock, then upon conversion of the Note to Common Stock. [*See* Ex. A, at p. 1 ¶ 3].

**C. Pepperwood takes control of Giant Gray through a buy-out of the controlling preferred and common stock owned by Debi and Ray Davis.**

23.     In or around January 2016, Pepperwood, a company owned and controlled by O'Donnell, took control of Giant Gray by purchasing 1,000 shares of Series A Convertible Preferred Stock (the "Series A Stock") and 1,530,000 shares of common stock (the "Common Stock") from Ray C. Davis and Debi S. Davis for an aggregate purchase price of $15,000,000. Thereafter, O'Donnell stepped in as the new Chief Operating Officer and Chairman of the board of directors.

24.     To fund the stock purchase, Pepperwood raised $21 million from investors through a private placement memorandum under which Pepperwood would purchase the controlling preferred and common stock in Giant Gray and then cause Giant Gray to issue "Series X Stock" to Pepperwood's investors.  Upon information and belief, O'Donnell and Kalil

---

[2] Giant Gray, Inc. was originally formed under the name Behavioral Recognition Systems, Inc. ("BRS"), which changed its name to Giant Gray, Inc. on March 21, 2016 after O'Donnell took control of the company.  For purposes of brevity and to avoid confusion, Plaintiffs refer to both BRS and Giant Gray, collectively, as "Giant Gray."

secretly paid themselves a "finder's fee" of $5 million, split 50/50 between the two of them, out of the $21 million Pepperwood raised from investors.  The $5 million finder's fee was not disclosed in Pepperwood's private placement memorandum.

25.     Despite the true nature of Pepperwood's private placement memorandum and investment in Giant Gray—a stock purchase—O'Donnell surreptitiously reclassified the transaction as a secured loan on Giant Gray's books.  Then, on February 23, 2016, O'Donnell caused Giant Gray to execute a Secured Promissory Note in favor of Pepperwood in the sum of $10,000,000.

**D.  Giant Gray defaults on Plaintiffs' Notes immediately after O'Donnell takes over.**

26.     After O'Donnell took control of Giant Gray in February 2016, Giant Gray stopped making monthly interest payments to Plaintiffs on their Notes.

27.     Then, on March 1, 2016, Giant Gray sent a letter to Plaintiffs (the "March 1, 2016 Letter") explaining why Giant Gray did not make its interest payments, stating, to wit:

> [Giant Gray] has held these interest payments because it cannot pay interest out of operating capital and is asking for your support while management finalizes the Pepperwood investment. Management expects the Pepperwood investment to be complete and funded by April 1, 2016.

[*See* Ex. B, March 1, 2016 Letter].  Additionally, the March 1, 2016 Letter offered each note holder warrants exercisable at $1.00 per share.  Upon information and belief, the March 1, 2016 Letter was sent at the behest of O'Donnell and the other Defendants who already had taken control of Giant Gray, unbeknownst to Plaintiffs.  A true and correct copy of the March 1, 2016 Letter is attached hereto as **Exhibit "B"** and incorporated herein by reference.

28.     On March 21, 2016, BRS filed a Certificate of Amendment with the Texas Secretary of State's office changing the company's name to Giant Gray, Inc.  The Certificate of Amendment was signed by Steve Sulgrove as President and CEO of BRS (now Giant Gray).

**E.  The 1st Note Modification and Extension.**

29.     On June 3, 2016, Michael O'Donnell sent a letter agreement to Plaintiffs on behalf of Giant Gray (the "1st Note Modification and Extension") requesting Plaintiffs to "agree to certain interest deferrals and principal deferrals by countersigning this letter below." A true and correct copy of the 1st Note Modification and Extension is attached hereto as **<u>Exhibit "C"</u>** and incorporated herein by reference. The pertinent provisions of the 1st Note Modification and Extension are as follows:

> For good and valuable consideration, the receipt and sufficiency of which is confirmed and acknowledged, you hereby agree that, commencing with the month of April 2016, all interest accruing under the Notes held by you (directly or indirectly), as well as any and all principal payments that become due pursuant to the terms of the Notes, if any, shall accrue, compound and be due and payable within thirty (30) days of the earlier of (a) the date that the Company has raised an aggregate of at least $15,000,000 through the sale of intellectual property; and (b) July 31 , 2016 (such earlier date, (a) or (b), the "Required Payment Date"), such that all interest and principal due and payable on the Notes for the period from April 1, 2016, to the Required Payment Date shall be due and payable by the Company within thirty (30) days after the Required Payment Date (the "Interest Accrual" and the "Principal Accrual", which are collectively referred to herein as the "Accrual").

[*See* Ex. C, 1st Note Modification and Extension].

30.     Plaintiffs signed the 1st Note Modification and Extension and delivered an executed copy to Giant Gray in June 2016.

**F.  The 2nd Note Modification and Extension.**

31.     When the first extended maturity date arrived, Giant Gray did not pay the amounts owed to Plaintiffs as promised.  Instead, Giant Gray sent a second letter to Plaintiffs on September 8, 2016 (the "2nd Note Modification and Extension") requesting a second extension of the repayment terms and maturity date.  A true and correct copy of the 2nd Note Modification and Extension is attached hereto as **<u>Exhibit "D"</u>** and incorporated herein by reference.  The 2nd Note

Modification and Extension proposed to modify and extend the Notes as follows:

> From September 1, 2016 (the "Effective Date") until the earlier of (i) March 31, 2017; and (ii) the date that the Company raises at least $ 10,000,000.00 through the sale of assets (the "Assets" and the "Sale Date")(such applicable period, the "Deferral Period" and such earlier date, the "Deferral End Date"), interest accrued on the Note(s) during such Deferral Period shall be added to the principal amount of the Note(s) and due at maturity, and any principal and interest payments which would have been due on such Note(s) shall be deferred through the Deferral Period (provided such unpaid amounts shall remain as principal due under the Notes(s))(collectively, the "Deferral"); provided that the Company will use commercially reasonable good faith efforts to commence monthly interest payments on the Notes(s) if the Company, in the reasonable determination of the Board of Directors, has determined the Company has sufficient available cash on hand and cash flow to make these payments, before the end of the Deferral Period, by paying the oldest outstanding balances first, based on the original due dates of the Note(s) and Other Notes.

* * *

> As consideration for agreeing to the terms and conditions set forth herein, the Acknowledging Noteholders shall jointly hold a subordinated security interest in the Company's assets in order to secure amounts owed under the Notes, which shall not be documented by the filing of any financing statement and which shall be enforceable only with the approval of Acknowledging Noteholders holding a majority of the principal amount of the Acknowledging Noteholders Notes, and only upon default by the Company of the terms and provisions of the letter agreement (the "Agreement").

[*See* Ex. D, 2nd Note Modification and Extension, at pp. 1-2].

32.    Plaintiffs agreed to the 2nd Note Modification and Extension in reliance on Giant Gray's promise that Plaintiffs were receiving security interests in Giant Gray's artificial intelligence patents and other intellectual property.  In or around early September 2016, Plaintiffs executed the 2nd Note Modification and Extension, thereby extending the Notes' maturity dates to March 31, 2017.

### G.  The Fraudulent Transfers.

33.    After Plaintiffs executed the 2nd Note Modification and Extension, Defendants used the six-month extension period to execute their scheme to defraud Plaintiffs by fraudulently

encumbering and fraudulently transferring Giant Gray's patents and intellectual property.

34.     On October 7, 2016, Giant Gray fraudulently granted Pepperwood a "blanket" security interest in all of Giant Gray's assets.  Pepperwood filed a UCC-1 financing statement on or around the same date under UCC Filing No. 16-0033273631 in the Texas Secretary of State's office to perfect its security interest.  The security interest granted to Pepperwood was concealed from Plaintiffs and was intended to defraud Plaintiffs by encumbering Giant Gray's assets before Plaintiffs could perfect the security interests they were granted by Giant Gray under the 2nd Note Modification and Extension Agreement.

35.     After successfully encumbering all of Giant Gray's assets with Pepperwood's security interest, O'Donnell—who controlled both Pepperwood (the lender) and Giant Gray (the borrower)—caused Giant Gray to default on its "loan" from Pepperwood.  Then, on January 31, 2017, Giant Gray executed an Assignment of Intellectual Property Rights (the "Pepperwood Assignment"), transferring all of its patents and intellectual property rights to Pepperwood. Giant Gray received grossly inadequate consideration in exchange.

36.     The next day, on February 1, 2017, Pepperwood executed a similar Assignment of Intellectual Property Rights (the "Omni Assignment"), transferring the same patents and intellectual property rights to Omni.

37.      The foregoing transfers rendered Giant Gray insolvent with virtually no assets of any value.[3]  Further, Giant Gray did not receive a reasonably equivalent value for the transfers.

## IV.
## CAUSES OF ACTION

### COUNT 1: FRAUDULENT TRANSFER

### (Pepperwood, Giant Gray, and Omni)

---

[3] Because the assets were fraudulently transferred, Giant Gray retained an equitable interest in the transferred assets.

38.     Plaintiffs hereby incorporate by reference each and every paragraph of the factual allegations stated in this Petition as if fully and completely set forth herein.

39.     Plaintiffs are the owners and holders of the Notes, which exist as a valid, subsisting debt owed by Giant Gray that has not been satisfied in whole or in part.

40.     On or around February 23, 2016, at a time when Plaintiffs were creditors of Giant Gray, Giant Gray incurred a $10 million debt obligation in favor of Pepperwood and transferred a security interest to Pepperwood relating thereto.  Pepperwood's loan and security interest was concealed from Plaintiffs, however, and was not perfected until October 7, 2016—shortly after Giant Gray agreed to grant Plaintiffs a security interest in the same assets.

41.     On January 31, 2017, Giant Gray transferred its patent and intellectual property rights to Pepperwood which, in turn, transferred the assets to Omni the following day on February 1, 2017.

42.     The foregoing transfers were actually and constructively fraudulent under TEX. BUS. & COM. CODE §§ 24.005(a)(1), (a)(2) and 24.006(b)(1).

**A.  Actual Fraudulent Transfer Under TEX. BUS. & COM. CODE § 24.005(a)(1).**

43.     The transfers were made with the actual intent to hinder, delay, or defraud Giant Gray's creditors, including Plaintiffs, in that—

- the transfers were to an insider, namely, Pepperwood and Omni, both of which are owned and controlled by Michael O'Donnell;

- the transfers were intended to prevent Plaintiffs from perfecting the security interests granted unto them in the 2nd Note Modification and Extension;

- the transfers were concealed from Plaintiffs;

- before the transfer was made or obligation was incurred, Giant Gray had been sued or threatened with suit;

- Giant Gray maintains control over the assets transferred to Pepperwood, and then to Omni, by and though O'Donnell control over all three entities;

- Giant Gray absconded;

- Giant Gray removed or concealed assets;

- the transfers encumbered or assigned substantially all of Giant Gray's assets to Pepperwood and Omni;

- the value of the consideration received by Giant Gray was not reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

- Giant Gray was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

- Giant Gray made the transfers without receiving a reasonably equivalent value in exchange for the transfer or obligation, in that Giant Gray received grossly inadequate consideration in exchange for transferring the assets worth an estimated $200 million, according to O'Donnell and the other Defendants;

- the transfers occurred shortly after a substantial debt was incurred;

- Giant Gray transferred the essential assets of its business to a lienor who transferred the assets to an insider of Giant Gray.

44.     At the time of the transfers, O'Donnell, and therefore Pepperwood and Omni, had notice of Giant Gray's intent to delay, hinder or defraud Plaintiff because O'Donnell owns, controls and is a vice principal of Giant Gray, Pepperwood, and Omni.

45.     After the transfers were made Giant Gray was left with insufficient assets to satisfy Plaintiffs' claims.

**B. Constructive Fraudulent Transfer Under TEX. BUS. & COM. CODE § 24.005(a)(2).**

46.     Giant Gray made the transfers without receiving a reasonably equivalent value in exchange for the transfer or obligation, and Giant Gray (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

**C.  Constructive Fraudulent Transfer Under TEX. BUS. & COM. CODE § 24.006(a).**

47.    The transfer or obligation was incurred without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

**D.  Relief Requested**

48.    Pursuant to TEX. BUS. & COM. CODE § 24.008, Plaintiffs are entitled and therefore seek—

      i.    avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

      ii.    an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the applicable TEXAS RULES OF CIVIL PROCEDURE and the CIVIL PRACTICE AND REMEDIES CODE relating to ancillary proceedings;

      iii.    an injunction against further disposition by Giant Gray, Pepperwood, and Omni of the asset transferred or of other property;

      iv.    appointment of a receiver to take charge of the asset transferred or of other property of the transferee; and

      v.    such other and further relief at law and in equity to which Plaintiffs are justly entitled.

49.    Pursuant to TEX. BUS. & COM. CODE § 24.013, Plaintiffs seek recovery of costs and reasonable attorney's fees as are equitable and just against Defendants, jointly and severally.

## COUNT 2: BREACH OF CONTRACT

### (Giant Gray)

50.     Plaintiffs hereby incorporate by reference each and every paragraph of the factual allegations stated in this Petition as if fully and completely set forth herein.

51.     Giant Gray executed the Notes in favor of Plaintiffs effective on or around May 1, 2015.  Giant Gray and Plaintiffs later agreed to amend the Notes pursuant to the terms of the 1st Note Modification and Extension Agreement and the 2nd Note Modification and Extension Agreement.

52.     Pursuant to the Notes, Giant Gray agreed to pay Plaintiffs $7,765,000, plus late fees and interest.  Giant Gray further agreed to grant Plaintiffs a security interest in its assets.

53.     Giant Gray breached its obligations under the Notes by failing to pay principal and interest when due. Such breaches were material in that they deprived Plaintiffs of the primary benefits they reasonably expected to receive and relied upon in lending monies to Giant Gray and in agreeing to the extend the maturity dates under the 1st Note Modification and Extension Agreement and 2nd Note Modification and Extension.

54.     Plaintiffs fully performed all contractual obligations that became due.

55.     All conditions precedent to Plaintiffs' right to receive payment of principal, interest, and late fees, and to enforce their security interests, have been completed and have occurred.  The Notes matured by their terms, as amended under the 2nd Note Modification and Extension, on March 31, 2017.  Plaintiffs sent notice of default to Giant Gray on May 10, 2017 and provided a 10-day opportunity to cure.  Plaintiffs sent notice of foreclosure and intent to file suit on June 2, 2017.  Additionally, Plaintiffs filed UCC-1 financing statements in the Texas Secretary of State's office and notices of assignment in the U.S. Patent and Trademark Office to

perfect their security interests in Giant Gray's patents and intellectual property, including, *inter alia*, the following:

| U.S. Patent Application No. | U.S. Patent No. | PCT International Application No. |
|---|---|---|
| 62/318964 | 9104918 | US2013032075 |
| 62/318977 | 9111148 | US2015058025 |
| 62/318999 | 9111353 | US2015058071 |
| 62/319068 | 9113143 | US2015064931 |
| 62/319170 | 9208675 | US2015064943 |
| 12/543223 | 9232140 | US2015064954 |
| 13/839587 | 9317908 | |
| 13/930190 | 9349054 | |
| 13/931058 | 9349275 | |
| 14/569034 | 9373055 | |
| 14/569104 | 9412027 | |
| 14/569161 | 9460522 | |
| 14/863267 | 9471844 | |
| 14/863295 | 9507768 | |
| 14/863311 | 9633275 | |
| 14/863344 | 9639521 | |
| 14/952090 | | |
| 14/988475 | | |
| 15/090346 | | |
| 15/090366 | | |
| 15/090795 | | |
| 15/090862 | | |
| 15/090874 | | |
| 15/091209 | | |
| 15/132670 | | |
| 15/135382 | | |
| 15/135404 | | |
| 15/163461 | | |
| 15/461139 | | |

56.     Despite Plaintiffs' notices and demands for payment, Giant Gray has failed and refused to pay the balance owed to Plaintiffs on their respective Notes.

57.     Giant Gray's breaches caused injury to Plaintiffs, which resulted in direct and consequential damages within the jurisdictional limits of this Court.

58.     Plaintiffs are entitled to, and therefore seek, recovery of damages from Giant Gray in the sum of $7,765,000, plus accrued interest, late fees, costs and attorney's fees.  Additionally and alternatively, to the extent necessary, Plaintiffs seek an order of sale to foreclose

## COUNT 3: STATUTORY FRAUD

### (All Defendants)

59.     Plaintiffs hereby incorporate by reference each and every factual allegation stated in this Petition as if fully and completely set forth herein.

60.     Pleading in the alternative, if necessary, and without waiving or limiting any allegations, causes of action, defenses, and/or theories of liability, Plaintiffs assert a cause of action against the above Defendants for statutory fraud in a stock transaction under TEX. BUS. & COM. CODE § 27.01.

61.     Plaintiffs and Giant Gray were parties to contracts involving Giant Gray's stock.  Specifically, the Notes granted each of the Plaintiffs warrants to purchase shares of Giant Gray's common stock.  [See Ex. A, Note at § 2].   The 1st Note Modification and Extension and 2nd Note Modification and Extension also grant warrants to Plaintiffs and therefore constitute transactions involving stock in Giant Gray.

62.     Defendants, both before and during the transaction, made false representations of material facts, false promises, and/or benefitted from not disclosing a misrepresentation or false promises with the purpose and intention of inducing Plaintiffs to enter into the 1st Note Modification and Extension and 2nd Note Modification and Extension.

63.     Ozzie Kalil acted as the liaison between Giant Gray and Plaintiffs for all communications and negotiations relating to the 1st and 2nd Note Modification and Extension agreements.  To facilitate more efficient communications with the noteholders, Gill Davis and

Tammie Steele served as liaisons between the noteholders and Ozzie Kalil since they were the ones who had introduced Plaintiffs to Giant Gray.  During the course of the negotiations that occurred in and around June 3, 3016 and September 8, 2016, Ozzie made numerous representations and false promises to Gill Davis and Tammie Steele, knowing that such information would then be communicated to Plaintiffs.

64.     Upon information and belief, O'Donnell, Kalil, Hannah, Nicholas, Giant Gray and Pepperwood had actual knowledge of the contents of the 1st and 2nd Note Modification and Extension agreements, including the representations and promises made therein, including the promise to grant Plaintiffs security interests in Giant Gray's assets.  These Defendants also had actual knowledge, upon information and belief, that Kalil made assurances and promises to Plaintiffs, through Gill Davis and Tammie Steele, that Giant Gray would repay the Notes in full if they agreed to the proposed extension, either by selling the underlying collateral or attaining profitability.  Upon information and belief, Defendants had no intention of selling the assets to pay Plaintiffs' loans, nor did they intend to attain profitability.  Rather, their sole intention was to take the assets out of Giant Gray before Plaintiffs could enforce their Notes and security interests against Giant Gray.

65.     Upon information and belief, O'Donnell, Kalil, Hannah, Nicholas, Giant Gray, and Pepperwood were directly involved in formulating the provisions of the 1st and 2nd Note Modification and Extension agreements, and they used the two instruments as the means to perpetrate their fraudulent scheme.  Upon information and belief, they knew at the time the 1st and 2nd Note Modification and Extension agreements were executed that Giant Gray had no intention of using the extension period to attain profitability or sell assets to obtain the funds necessary to repay the amounts owed Plaintiffs under the Notes, nor did they intend to allow

Plaintiffs to perfect their promised security interest in Giant Gray's assets.  Instead, at the time the agreements were executed, Defendants primary objective, upon information and belief, was to obtain an extension of the maturity date so that they could strip away all of Giant Gray's assets before Plaintiffs could enforce their promised security interests.

66.    Plaintiffs relied on such misrepresentations and false promises by foregoing collection efforts, foregoing perfection of their security interests, and entering into and performing the 1st Note Modification and Extension and 2nd Note Modification and Extension.

67.    Defendants Pepperwood, Giant Gray, Omni, O'Donnell, and Kalil made the false representations with actual awareness of their falsity, and made false promises with no intention of performing them at the time they were made.

68.    Upon information and belief, Defendants Pepperwood, Omni, O'Donnell, Kalil, Hannah, and Nicholas had actual awareness of the falsity of said representations and false promises and failed to disclose the falsity of the representations or promises to Plaintiffs. Further, each of the foregoing Defendants benefitted from the false representations or promises by receiving substantially all of Giant Gray's assets and/or stock and other financial benefits in newly-formed Omni.  Specifically, O'Donnell, Kalil, and Hannah received stock, directly or indirectly, in Omni as well as positions in management and/or on its board of directors.  Further, O'Donnell and Kalil received $5 million ($2.5 million each).

69.    As a result of Defendants' fraudulent conduct, Plaintiffs suffered actual damages in an amount within the minimum jurisdictional limit of this Court.

70.    Pursuant to TEX. BUS. & COM. CODE § 27.01(b), (c) and (e), Plaintiffs seek recovery of actual damages, exemplary and/or punitive damages, reasonable and necessary attorney's fees, expert witness fees, costs for copies of depositions, and costs of court.

## COUNT 4: COMMON-LAW FRAUD

### (All Defendants)

71.     Plaintiffs repeat and incorporate by reference the paragraphs above and herein.

72.     All Defendants defrauded Plaintiffs by means of fraudulent misrepresentations and false promises.

73.     As set forth herein, before and after entering into the 1st and 2nd Note Modifications, Defendants made misrepresentations of material fact to Plaintiffs regarding the nature and status of Pepperwood's investment in Giant Gray, the value of Giant Gray's assets, and Giant Gray's plans to transfer its assets to Pepperwood.

74.     The false statements of fact and false promises were material because Plaintiffs would not have executed the 1st or 2nd Note Modification and Extension had they been told the truth about Pepperwood's secured loan and Giant Gray's planned default and the collusive insider transfer of assets to Pepperwood.  Further, Giant Gray had no intention of performing its promise to pay the Notes by the extended maturity date or to grant Plaintiffs security interests in the patents and intellectual.  Instead, Giant Gray used the Note extensions as a subterfuge to get more time to fraudulently transfer Giant Gray's assets before a default occurred—thereby preventing Plaintiffs from perfecting security interests in the patents and intellectual property.

75.     At the time the representations and promises were made, Defendants knew that such representations and promises were false and/or made the representations recklessly, without any regard for their truth, with the intent that Plaintiffs would rely on them.

76.     Plaintiffs reasonably believed and did in fact rely on these representations false promises and, as a result, Plaintiffs were induced to enter into the 1st and 2nd Note Modification and Extensions and to forego collection efforts.

77.     As a direct and proximate result of such actions, Plaintiffs sustained actual damages including in an amount within the jurisdictional limits of this Court.

78.     The acts described above constitute "actual fraud" in that Defendants made false, material misrepresentations that they either knew to be false or asserted recklessly without knowledge of the truth, with the intent that Plaintiffs would act on the misrepresentations. Plaintiffs did indeed act in reliance on the misrepresentations, and have been injured as a result. Accordingly, Plaintiffs seek exemplary damages under Sections 41.001 *et seq.* of the TEXAS CIVIL PRACTICE AND REMEDIES CODE.

## COUNT 5: FRAUD BY NONDISCLOSURE

### (All Defendants)

79.     Plaintiffs hereby incorporate by reference each and every factual allegation stated in this Petition as if fully and completely set forth herein.

80.     Pleading in the alternative, if necessary, and without waiving or limiting any allegations, causes of action, defenses, and/or theories of liability, Plaintiffs assert a cause of action against the above Defendants for fraud by non-disclosure.

81.     Giant Gray, O'Donnell, Kalil, and Hannah concealed or failed to disclose information relating to Giant Gray's assets in which Plaintiffs were granted security interests. Giant Gray, O'Donnell, and Kalil also failed to disclose that Pepperwood's investment in Giant Gray had been reclassified as a secured loan; that Pepperwood perfected a security interest immediately after Plaintiffs executed the 2nd Note Modification and Extension; that Hannah was the only noteholder that would receive an interest in Omni; and that Giant Gray intended to default on Pepperwood's note and transfer all of its assets to Pepperwood before Plaintiffs could perfect their security interests.

82.     Giant Gray, O'Donnell, Kalil, and Hannah had a duty to disclose this information to Plaintiffs because they (1) discovered new information that made an earlier representation to Plaintiffs misleading or untrue; (2) created a false impression by making a partial disclosure; and/or (3) voluntarily disclosed some information and therefore had a duty to disclose the whole truth.

83.     The concealed or nondisclosed information was material.

84.     Defendants knew Plaintiffs were ignorant of the facts and did not have an equal opportunity to discover the truth.

85.     All Defendants were deliberately silent when they had a duty to speak.

86.     All Defendants intended for Plaintiffs to rely on the omission or concealment.

87.     The nondisclosure of such information caused Plaintiffs injury, resulting in actual damages as set forth herein.

88.     Plaintiffs seek to recover unliquidated damages within the jurisdictional limits of this Court and exemplary damages.

## COUNT 6: CIVIL CONSPIRACY

### (All Defendants)

89.     Plaintiffs repeat and incorporate by reference the paragraphs above and herein.

90.     Plaintiffs assert a cause of action against all Defendants for conspiracy to commit violations of the fraudulent transfer act, conspiracy to commit statutory fraud, conspiracy to commit common-law fraud, and conspiracy to commit fraud by nondisclosure.

91.     Plaintiffs are informed and believe, and therefore allege, that all Defendants agreed to and were part of a conspiracy to defraud Plaintiffs by fraudulently inducing Plaintiffs to extend the maturity date of the Notes by making false promises to grant Plaintiffs security

interests in Giant Gray's assets; and then fraudulently transferring Giant Gray's assets to Pepperwood and Omni before Plaintiffs could perfect or enforce their security interests.

92.     Pursuant to and in furtherance of their conspiracy, in a concerted effort, Defendants did the following, among other things: (1) caused Giant Gray to default on Plaintiffs' Notes; (2) mischaracterized Pepperwood's investment as a $10 million secured loan with a security interest in all of Giant Gray's assets instead of properly accounting for it as an equity contribution or stock purchase; (3) fraudulently induced Plaintiffs to extend the maturity dates of the Notes by making fraudulent misrepresentations, fraudulently concealing material facts, and making false promises to grant Plaintiffs security interests in Giant Gray's assets; (4) filed fraudulent UCC-1 financing statements purporting to perfect security interests in all of Giant Gray's assets immediately after promising Plaintiffs security interests in the same assets; (5) caused Giant Gray to default on its loan; and (6) fraudulently transferred Giant Gray's patents and intellectual property to Pepperwood and then to Omni.

93.     Defendants' actions and omissions in furtherance of the conspiracy caused Plaintiffs injury, resulting in actual damages as set forth herein.

94.     Plaintiffs seek to recover actual damages and exemplary damages within the jurisdictional limits of this Court.

**V.**
**DAMAGES AND LIABILITY**

95.     Plaintiffs repeat and incorporate by reference the allegations set forth in the foregoing paragraphs as if set forth herein verbatim.

**A.  Actual Damages**

96.     As a result of Defendants' wrongful conduct, Plaintiffs have suffered actual damages, including, but not limited, the loss of unpaid principal and interest on the monies

loaned to Giant Gray, lost profits, out-of-pocket expenses, and attorney's fees and costs in an amount exceeding the minimum jurisdictional limit of this Court.

**B.  Attorney's Fees and Costs**

97.      Pursuant to the Notes, TEX. CIV. PRAC. & REM. CODE § 38.001, and TEX. BUS. & COM. CODE §§ 24.013 and 27.01, Plaintiffs are entitled to recover reasonable and necessary attorneys' fees and costs associated with prosecuting this action.

**C.  Pre-Judgment and Post-Judgment Interest**

98.      Pursuant to Chapter 304 of the TEXAS FINANCE CODE and the Texas common law, Plaintiffs are entitled to recover pre- and post-judgment interest, at the maximum statutory rate.

**D.  Exemplary Damages**

99.      As a result of Defendants' fraud and malice in committing the fraudulent and wrongful conduct alleged herein, Plaintiffs are entitled, and therefore seek, exemplary damages in an amount "not less than" the maximum amount permitted by applicable law.  Pursuant to TEX. CIV. PRAC & REM. CODE § 41.008(c), Plaintiffs seeks recovery of exemplary damages from Defendants based on their knowing and intentional misconduct described as a felony in the following sections of the TEXAS PENAL CODE: TEX. PENAL CODE § 32.45 (Misapplication of Fiduciary Property); TEX. PENAL CODE § 32.46 (Securing Execution of Document by Deception), and TEX. PENAL CODE § 31.03 (Theft).   Accordingly, Plaintiffs' claims for exemplary damages are not subject to the cap provided in TEX. CIV. PRAC. & REM. CODE § 41.008(b).

**E.  Conspiracy and Participatory Liability**

100.      All of the Defendants acted in concert, conspired, jointly caused, knowingly participated in and/or aided and abetted each other in each cause of action alleged herein and,

therefore, they are jointly and severally liable to Plaintiffs for the damages caused by each of the acts, omissions, breaches, misfeasance, malfeasance and causes of action set forth herein.

**F.  Agency and Vicarious Liability**

101.    The entity-Defendants are vicariously liable for the acts and/or omissions of their respective employees and/or agents.

102.    Pleading in the alternative, if necessary, and without limiting or waiving any allegations, claims, defenses, causes of action, and/or theories of liability whatsoever, each of the individual Defendants acted as agents for other corporate and/or individual Defendants and performed acts for them within the course and scope of such agency at all times material to this action.    Therefore, Defendants are vicariously liable for the wrongful conduct of other Defendants under the doctrine of *respondeat superior*.

103.    Further, pleading in the alternative, if necessary, and without limiting or waiving any allegations, claims, defenses or causes of action; and in the unlikely event that the individual Defendants did not have actual authority, either express or implied, to act on behalf of the other Defendants, Plaintiffs aver such individual Defendants had apparent authority to perform such acts on behalf of the other Defendants and/or the other Defendants knowingly permitted such individual Defendants to hold themselves out as having authority; and/or the other Defendants' actions lacked such ordinary care as to clothe the individual Defendants with the indicia of authority.    Therefore, all Defendants are vicariously liable for the wrongful conduct of the individual Defendants under the doctrine of *respondeat superior*.

104.    Further, pleading in the alternative, if necessary, and without limiting or waiving any allegations, claims, defenses or causes of action; and in the unlikely event that the individual Defendants did not have actual authority, either express or implied, to act on behalf of the other

Defendants, Plaintiffs aver that the other Defendants are liable to Plaintiffs under the doctrine of ratification.   Specifically, all Defendants adopted the acts performed by the individual Defendants and accepted the benefits of their wrongful conduct.   Therefore, all Defendants are vicariously liable for the wrongful conduct of the individual Defendants under the doctrine of *respondeat superior*.

### G.  Control Person and Aiding and Abetting Under The Texas Securities Act.

105.    Each of the individual Defendants was a "control person" and "aider" at all material times as those terms are defined in the Texas Securities Act.

### H.  Vice-Principal

106.    All acts and omissions of corporate Defendants were conducted by and through individuals who were either (a) vice principals who were acting in his or her capacity as vice principal for the corporate defendant; or (b) agents who were then and there acting within the course and scope of his or her agency or employment with the corporate defendant.

### I.  Intentional Conduct

107.    The conduct of the Defendants described above was committed intentionally, willfully, and/or maliciously.

### J.  Joint Enterprise

108.    There was a joint enterprise among the Defendants inasmuch as there was (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

### K.  Corporate Veil Piercing

---

109.    O'Donnell, Kalil, Hannah, and Nicholas used certain corporate entities, including, but not limited to Giant Gray, Pepperwood and Omni, for the purpose of perpetrating and did perpetrate an actual or constructive fraud on Plaintiffs for their direct personal benefit. Under the circumstances, each of the foregoing corporate entities should be disregarded and their respective principals and beneficiaries, including but not limited to O'Donnell, Kalil, Hannah, and Nicholas, should be held individually liable.

**L.  Demand for Accounting**

110.    Plaintiffs are entitled, and hereby demand, an accounting from Giant Gray of all receipts and disbursements relating to the Property, including, without limitation, any and all consideration and proceeds received from the transfer, assignment, or sale of its assets from January 1, 2016 through the present.

**M. Constructive Trust**

111.    As a result of the actual or constructive fraud by Defendants, Plaintiffs are entitled to the imposition of a constructive trust on Giants Gray's patents and intellectual property described herein at paragraph 55, *supra*, and traceable proceeds thereof in Defendants' actual or construction possession.

**VI.**
**DEMAND FOR JURY TRIAL**

112.    Plaintiffs have demand a trial by jury on all issues so triable and submitted jointly the appropriate fee for jury trial in the state court action.

**VII.**
**CONDITIONS PRECEDENT**

113.    All conditions precedent to Plaintiffs' right to recover have been performed, have occurred, or were waived.

---

## VIII.
## <u>PRAYER</u>

WHEREFORE, Plaintiffs respectfully pray that the Court enter judgment for Plaintiffs and against the Defendants cited herein as follows:

a. enter judgment for Plaintiffs against Giant Gray, Inc. in the aggregate sum of $7,765,000, plus interest at the default rate and late fees as provided in the Notes, as amended; or, *in the alternative*, that Plaintiffs' security interests be foreclosed and that Giant Gray's patents and intellectual property described herein be sold to satisfy Giant Gray's obligations under the Notes; and

b. enter judgment for Plaintiffs against Defendants, jointly and severally, awarding actual damages, compensatory damages, and economic damages, including, but not limited to, out-of-pocket damages, benefit-of-the-bargain damages, lost-profits damages, direct, consequential and incidental damages, exemplary damages, and any other monetary relief to which Plaintiffs are entitled under the law as a result of the wrongful conduct of Defendants as alleged herein;

c. appointment of a receiver to take possession and control of Giant Gray and to sell the fraudulently transferred assets, at Defendants' expense; and

d. an attachment or other provisional remedy against the assets transferred or other property of the transferee in accordance with the applicable FEDERAL RULES OF CIVIL PROCEDURE and the CIVIL PRACTICE AND REMEDIES CODE relating to ancillary proceedings; and

e. an injunction against further disposition by Giant Gray, Pepperwood, and Omni of the assets transferred or of other property; and

f. appointment of a receiver to take charge of the assets transferred; and

g. an award of costs and reasonable attorney's fees as are equitable and just against

Defendants, jointly and severally, pursuant to the Notes, TEX. CIV. PRAC. & REM. CODE § 38.001 and TEX. BUS. & COM. CODE §§ 24.013; and

       h.   award exemplary damages, reasonable and necessary attorney's fees, expert witness fees, costs for copies of depositions, and costs of court, pursuant to TEX. BUS. & COM. CODE § 27.01(e); and

       i.   award prejudgment and post-judgment interest under Chapter 301 *et. seq.* of the TEXAS FINANCE CODE, or, alternatively, under the common law; and

       j.   grant to Plaintiffs such other and further relief, at law or in equity, as may be just and appropriate to correct the wrongs done unto Plaintiffs by Defendants.


       Respectfully submitted,

       WILSON, CRIBBS + GOREN, P.C.

       By: */s/ Brian B. Kilpatrick*
       Brian B. Kilpatrick, TBN 24074533
       Email: bkilpatrick@wcglaw.com
       H. Fred Cook, TBN 04732500
       Email: hfcook@wcglaw.com
       Scot Clinton, TBN 24045667
       Email: sclinton@wcglaw.com
       2500 Fannin Street
       Houston, Texas 77002
       Telephone (713) 222-9000
       Facsimile (713) 229-8824

       ***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 5, 2017, the foregoing document was served electronically through the Court's ECF notification system upon all parties through their counsel of record.

*/s/ Brian B. Kilpatrick*
Brian B. Kilpatrick
